## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-2549

**MESHARIA ROL-HOFFMAN**,

Plaintiff,

v.

**REGIONAL CARE, INC. and OSF INVESTMENTS, LLC d/b/a CARPET EXCHANGE EMPLOYEE BENEFIT PLAN**,

Defendants.
_____

## COMPLAINT
_____

Plaintiff, Mesharia Rol-Hoffman, by and through her attorneys, Bendinelli Law Firm, P.C., hereby submits her Complaint against Defendants Regional Care, Inc. and OSF Investments, LLC d/b/a Carpet Exchange Employee Benefit Plan. In support thereof, Plaintiff states and alleges as follows:

## JURISDICTION AND VENUE

1.      Plaintiff, Mesharia Rol-Hoffman, is, and was at all relevant times, a resident of the State of Colorado, residing at 4752 Moonshine Ridge Trail, Parker, Colorado 80134.

2.      Defendant, Regional Care, Inc. ("RCI"), is, and was at all relevant times, a Foreign Corporation in good standing and licensed to do business in the State of Colorado.

3.      Upon information and belief, RCI maintains its principal place of business at 905 West 27th Street, Scottsbluff, Nebraska 69361.

4.      Upon information and belief, Defendant OSF Investments, LLC d/b/a Carpet Exchange Employee Benefit Plan (the "Plan") is a plan arising under the Employee Retirement

Income Security Act of 1974 (ERISA) and is capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

5.      Upon information and belief, OSF Investments, LLC is, and was at all relevant times, a Foreign Corporation in good standing and licensed to do business in the State of Colorado, with its principal place of business at 1904 3rd Ave, Suite 325, Seattle, WA 98101.

6.      The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1367 and 29 U.S.C. § 1132(e) and (f). Jurisdiction of the Court is based upon ERISA; and in particular, 29 U.S.C. § 1132(e)(1) & 1132(f), and 28 U.S.C. §§ 1331 and 1367. Those provisions give district court's jurisdiction to hear civil actions brought to recover benefits under the terms of an employee welfare benefit plan.

7.      The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. § 1132(e)(2) given that the Plan is administered in this district, the breaches took place in this district, both Defendants may be found in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

9.      The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Plaintiff submitted an appeal of the subject adverse benefit determination and Defendant upheld its determination; thus, this matter is ripe for judicial adjudication.

## THE PARTIES

10.     At all relevant times, Plaintiff was an employee of OSF Investments, LLC d/b/a Carpet Exchange within the meaning of Section 3(6) of ERISA, 29 U.S.C. § 1002(6).

11.     At all relevant times, Plaintiff was a participant of the Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7). The Plan provides benefits for employees of Carpet Exchange, including medical and health care insurance. (A true and correct copy of the Plan issued as Group Policy Name CRPTEXC is attached hereto and incorporated herein as **Exhibit A**).

12.     At all relevant times, Plaintiff was a beneficiary of the Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(8).

13.     At all relevant times, RCI was and is the Plan's Administrator within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A), and a fiduciary of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

14.     At all relevant times, the Plan administered by RCI is and was an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. §1002(1).

## GENERAL ALLEGATIONS

15.     Plaintiff incorporates by reference all allegations previously set forth herein.

16.     Plaintiff was employed as a Sales Manager at Carpet Exchange during the time that she was severely injured in a single-vehicle, motor vehicle accident on December 15, 2018 in Douglas County, Colorado (the "accident").

17.     The accident occurred between approximately 12:10 a.m. and 12:20 a.m. on December 15, 2018.

18.     At approximately 12:28 a.m., the Douglas County Sheriff's Department arrived on scene.

19.     The responding officer issued Plaintiff a citation for Careless Driving.

20.     At no point did the responding officer determine that Plaintiff was inebriated or over the legal limit for drinking and driving.

21.     At approximately 1:12 a.m., Plaintiff was transported via ambulance to be evaluated and treated in the Emergency Department of Parker Adventist Hospital.

22.     As a result of the accident, Plaintiff sustained multiple traumatic injuries, including but not limited to, a liver laceration, multiple fractures, bilateral pulmonary contusion, adrenal hematoma, and a traumatic brain injury with subdural hematoma and loss of consciousness.

23.     As a result of the treatment she required for the injuries sustained in the accident, Plaintiff's medical bills exceed $1,000,000.00.

24.     Plaintiff, as a participant and beneficiary under the Plan, filed claims with Defendant RCI for medical benefits as a result of her injuries following the accident.

25.     Plaintiff's claims for medical benefits as a direct result of the accident are valid and recoverable under the Plan.

26.     On May 21, 2019, RCI sent Plaintiff numerous Explanation of Benefit statements in which it specified that every medical claim related to Plaintiff's accident was "not covered per the plan document."

27.     In denying the claims for medical benefits, RCI provided no other rationale, evidence, or proof that Plaintiff's injuries resulting from the accident were not covered by the Plan.

28.     Under the terms of the Plan, RCI was required to provide Plaintiff with notice of an adverse benefit determination, either in writing or electronically, containing the following information:

a.   A reference to the specific portion(s) of the Plan Document upon which a denial is based;

b.   Specific reason(s) for a denial;

c.   A description of any additional information necessary for the Claimant to perfect the claim and an explanation of why such information is necessary;

d.   A description of the Plan's review procedures and the time limits applicable to the procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an Adverse Benefit Determination on final review;

e.   A statement that the Claimant is entitled to receive, upon request, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's claim for benefits;

f.   Upon request, the identity of any medical or vocational experts consulted in connection with a claim, even if the Plan did not rely upon their advice (or a statement that the identity of the expert will be provided, upon request);

g.   Any rule, guideline, protocol or similar criterion that was relied upon in making the determination (or a statement that it was relied upon and that a copy will be provided to the Claimant, upon request); and

h.   In the case of denials based upon a medical judgment (such as whether the treatment is Medically Necessary or Experimental), either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided to the Claimant, upon request.

29.     None of the information set forth in Paragraph 28(a)-(h) above was provided to Plaintiff by RCI with the adverse benefit determinations.

30.     On July 21, 2020, Plaintiff, through her authorized representative, sent a letter to RCI advising that she intended to appeal the adverse benefit determination for all claims arising out of the accident.

31.     In the July 21, 2020 letter, Plaintiff requested all documents, records, and other information relevant to the claim for benefits and RCI's adverse benefit determination.

32.     In the July 21, 2020 letter, Plaintiff specifically requested the following documents and information from RCI:

a.  An organizational chart for the Third-Party Administrator;

b.  Internal and external letters, e-mails, claim notes, and other correspondence related to the adverse benefit determination;

c.  Notes from any meetings and/or discussions that occurred regarding the adverse benefit determination;

d.  The identity of any experts consulted in connection with the adverse benefit determination even if the Plan did not rely upon their advice;

e.  All expert reports regarding the adverse benefit determination;

f.  All medical records, reports, letters, and other materials received in connection with an adverse benefit determination, even if it did not rely upon them in reaching its determination;

g.  Information regarding appeals procedures offered by the Plan;

h.  A description of any internal rule, guideline, protocol, or other similar criteria relied upon in making the adverse benefit determinations;

i.   The latest plan summary, plan description, and the latest annual report; and

j.   Any terminal report, bargaining agreement, trust agreement, contract, or other instruments under which the Plan is established or operated.

33.   Plaintiff requested these additional documents because RCI did not provide any specific reasons for denying her accident-related medical claims other than the six-word sentence: "not covered per the plan document."

34.   Plaintiff's July 21, 2019 letter was received by RCI on July 27, 2020.

35.   On September 4, 2019, after receiving no response from RCI, Plaintiff sent a second letter to RCI requesting the same information set forth in Paragraphs 31 and 32 (a)-(j) above.

36.   Plaintiff's September 4, 2019 letter was received by RCI on September 11, 2019.

37.   On October 11, 2019, seventy-six (76) days after receiving Plaintiff's July 21, 2020 letter and request for information, RCI provided some of the documents requested by Plaintiff.

38.   RCI did not provide the identity of any medical or vocational experts consulted in connection with a claim.

39.   RCI did not provide any rule, guideline, protocol or similar criterion that was relied upon, considered, or generated in making the determination.

40.   RCI did not provide the latest plan summary, plan description, or the latest annual report.

41.   On October 11, 2019, RCI provided a consulting opinion from an unknown author with Phia Group Consulting, LLC to Defendant RCI dated April 19, 2017 ("the Phia Group Opinion").

42.   The Phia Group Opinion concluded that the "Alcohol" exclusion and/or the "Illegal Acts" exclusion in the Plan could be applied to Plaintiff's request for benefits.

43. According to the Phia Group Opinion, the conclusion that the "Alcohol" and/or "Illegal Acts" exclusion could be applied was based on "the applicable Plan Document, along with the results of a blood test administered at Parker Adventist Hospital on 12/15/2018, at approximately 1:50 A.M."

44. According to the Phia Group Opinion, the "Alcohol" exclusion in the Plan Documents provides:

> **Alcohol**. Involving a Participant who has taken part in any activity made illegal due to the use of alcohol or a state of intoxication. ***The arresting officer's determination of inebriation will be sufficient for this exclusion.*** Expenses will be covered for Injured Participants other than the person partaking in an activity made illegal due to the use of alcohol or a state of intoxication, and expenses may be covered for Substance Abuse treatment as specified in this Plan, if applicable. This Exclusion does not apply if the Injury (a) resulted from being the victim of an act of domestic violence, or (b) resulted from a documented medical condition (including both physical and mental health conditions). (Emphasis added).

45. According to the Phia Group Opinion, the "Illegal Acts" exclusion in the Plan Documents provides:

> **Illegal Acts**. That are for any Injury or Sickness which is Incurred while taking part or attempting to take part in an illegal activity, including but not limited to felonies. It is not necessary that an arrest occur, criminal charges be filed, or, if filed, that a conviction result. Proof beyond a reasonable doubt is not required to be deemed an illegal act. This Exclusion does not apply if the Injury (a) resulted from being the victim of an act of domestic violence, or (b) resulted from a documented medical condition (including both physical and mental health conditions).

46. According to the Phia Group Opinion, the police report for the December 14, 2018 accident was not available to the Phia Group at the time it issued the opinion.

47. According to the Phia Group Opinion, the blood test administered to Plaintiff at Parker Adventist Hospital on 12/15/2018 at approximately 1:50 A.M., "indicates a blood alcohol level of 239mg/dL," accompanied by a note indicating that "[l]evels of > =80 mg/dL are under the influence per Colorado and Kansas State Law."

48.     Based solely on the Plan Documents and the 12/15/18 blood test, the Phia Group Opinion concluded: "Based on the information available, it appears that either exclusion could be applicable. The tested value of 239 mg/dl is almost three times the legal limit, and unless Participant continued to drink alcohol in transit to the hospital, it is reasonable to infer that the level was even higher at the time of the accident, at least an hour and fifty minutes prior. The presence of facts indicating that (1) the Participant was driving at the time of the accident and (2) the Participant was intoxicated at the time of the accident should be sufficient to trigger either exclusion."

49.     Based on the Phia Group Opinion, Plaintiff presumed that RCI denied payment of her medical expenses under the "Alcohol" and "Illegal Act" exclusions in the Plan Documents.

50.     On November 15, 2019, Plaintiff, through her authorized representative, timely sent a letter to RCI advising that Plaintiff was appealing the adverse benefit determination for all claims arising out of the accident.

51.     The November 15, 2019 appeal letter included the benefits at issue, facts supporting Plaintiff's claim for benefits, a statement of the reasons for disagreement, and documents that Plaintiff used to support her claims.

52.     The November 15, 2019 appeal letter alleged that Plaintiff's claims were inappropriately denied based on an uninformed reliance on the alcohol and illegal acts exclusions, which did not apply.

53.     The November 15, 2019 appeal letter included the following documents to support Plaintiff's claims:

   a.   Copies of the Explanation of Benefits for the claims denied by RCI;

   b.   The Plan Documents;

     c.    A sworn Declaration from Plaintiff;

     d.    The traffic accident report from the December 15, 2018 accident;

     e.    Plaintiff's paramedic records from December 15, 2018; and

     f.    Plaintiff's complete medical records from Parker Adventist Hospital.

54.    The traffic accident report provided with the November 15, 2019 appeal letter showed that the responding officer did not determine that Plaintiff was inebriated or over the legal limit for drinking and driving.

55.    The traffic accident report provided with the November 15, 2019 appeal letter showed that Plaintiff was only cited for careless driving.

56.    The November 15, 2019 appeal letter included information stating that the alcohol level that RCI relied upon, which was based on a blood serum alcohol level instead of whole blood, was unreliable.

57.    Upon information and belief, RCI received Plaintiff's appeal letter on November 15, 2019.

58.    Under the terms of the Plan, "The Plan Administrator shall notify the Claimant of the Plan's benefit determination on review within…. a reasonable period of time, but no later than 60 days after receipt of the appeal."

59.    Under the terms of the Plan Documents, RCI was required to notify Plaintiff of the Plan's benefit determination on review on or before January 14, 2020.

60.    Plaintiff did not receive notice of the Plan's benefit determination on review until March 6, 2020.

61.    On March 6, 2020, Plaintiff received a letter from RCI stating that its decision to deny claims as a non-covered benefit remained. ("Review Denial Letter").

62.     Even though Plaintiff did not receive the Review Denial Letter until March 6, 2020, RCI represented that it had been previously sent to Plaintiff on January 7, 2020.

63.     The Review Denial Letter sent to Plaintiff by RCI on March 6, 2020 was dated January 7, 2020.

64.     Upon information and belief, RCI intentionally misrepresented that the Review Denial Letter had been previously sent on January 7, 2020.

65.     The Review Denial Letter stated that RCI denied Plaintiff's claims because Plaintiff's injuries were a result of Plaintiff being engaged in a "Serious Illegal Act" by being under the influence of alcohol while operating her vehicle.

66.     The language of the Illegal Acts exclusion stated by RCI in its Review Denial Letter is not the same as the "Serious Illegal Acts" exclusion listed in the Phia Group Opinion:

Phia Group Opinion: Illegal Acts. That are for any Injury or Sickness which is Incurred *while taking part or attempting to take part in an illegal activity, including but not limited to felonies.* It is not necessary that an arrest occur, criminal charges be filed, or, if filed, that a conviction result. Proof beyond a reasonable doubt is not required to be deemed an illegal act. This Exclusion does not apply if the Injury (a) resulted from being the victim of an act of domestic violence, or (b) resulted from a documented medical condition (including both physical and mental health conditions). (Emphasis added.)

Review Denial Letter: Illegal Acts. Charges for services received as a result of Injury or Sickness occurring directly or indirectly, *as a result of a Serious Illegal Act, or a riot or public disturbance. "Serious Illegal Act" shall mean any act or series of acts that, if prosecuted as a criminal offense, a sentence to a term of imprisonment in excess of one year could be imposed.* It is not necessary that an arrest occur, criminal charges be filed, or, if filed, that a conviction result, or that a sentence of imprisonment for a term in excess of one year be imposed for this Exclusion to apply.   Proof beyond a reasonable doubt is not required to be deemed an illegal act. This Exclusion does not apply if the Injury (a) resulted from being the victim of an act of domestic violence, or (b) resulted from a documented medical condition (including both physical and mental health conditions). (Emphasis added.)

67.     The "Illegal Act" Exclusion as stated in RCI's Review Denial Letter is inapplicable because, even if there was evidence that Plaintiff was intoxicated while operating her vehicle at

the time of the accident, a sentence of imprisonment for a term in excess of one year cannot be imposed for a standard driving under the influence offense in the state of Colorado.

68.     The Review Denial Letter also relied upon the "Alcohol" exclusion in affirming the adverse benefit determination.

69.     The language of the "Alcohol" exclusion stated by RCI in its Review Denial Letter is not the same as the "Alcohol" exclusion listed in the Phia Group Opinion nor the Plan Documents:

> Plan/Phia Group Language: Alcohol. Involving a Participant who has taken part in any activity made illegal due to the use of alcohol or a state of intoxication. *The arresting officer's determination of inebriation will be sufficient for this exclusion.* Expenses will be covered for Injured Participants other than the person partaking in an activity made illegal due to the use of alcohol or a state of intoxication, and expenses may be covered for Substance Abuse treatment as specified in this Plan, if applicable. This Exclusion does not apply if the Injury (a) resulted from being the victim of an act of domestic violence, or (b) resulted from a documented medical condition (including both physical and mental health conditions). (Emphasis Added).

> Review Denial Letter: Alcohol. Involving a Participant who has taken part in any activity made illegal due to the use of alcohol or a state of intoxication. Expenses will be covered for Injured Participants other than the person partaking in an activity made illegal due to the use of alcohol or a state of intoxication, and expenses may be covered for Substance Abuse treatment as specified in this Plan, if applicable. This Exclusion does not apply if the injury (a) resulted from being the victim of an act of domestic violence, or (b) resulted from a documented medical condition (including both physical and mental conditions).

70.     The Review Denial Letter acknowledged that "[t]here was no arresting officer that mentioned Ms. Rol-Hoffman was inebriated or over the legal limit for drinking and driving" but stated that "other supporting documentation may be used as well such as medical records as attached."

71.     The Plan does not contain language that medical records or other supporting documentation may be used to apply the "Alcohol" exclusion.

72.     In its Review Denial Letter, RCI stated that an "outside Independent Review has been completed" regarding the difference in whole blood versus blood serum.

73.     In its Review Denial Letter, RCI acknowledged that its "outside Independent Reviewer" agreed that the alcohol blood serum values are higher than whole blood alcohol concentration values.

74.     In its Review Denial Letter, RCI acknowledged that "there was no arresting officer that mentioned Ms. Rol-Hoffman was inebriated or over the legal limit for drinking or driving…."

75.     The "outside Independent Review" report was not provided to Plaintiff in violation of both ERISA and the language of the Plan. The Plan states that the Plan Administrator shall provide a Claimant:

> A statement that the Claimant is entitled to receive, upon request, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's claim for benefits. Upon request, the identity of any medical or vocational experts consulted in connection with a claim, even if the Plan did not rely upon their advice (or a statement that the identity of the expert will be provided, upon request).

76.     On July 21, 2020, Plaintiff sent a letter to RCI requesting additional information including the complete report from the "outside Independent Review" referenced in the January 7, 2020 Review Denial Letter.

77.     On August 21, 2020, Plaintiff received the report from the "outside Independent Review," which RCI claimed to rely upon for its decision to affirm the denial of Plaintiff's claims as a non-covered benefit on review.

78.     The report from the expert who completed the "outside Independent Review" was dated January 23, 2020.

79.     The report from the expert who completed the "outside Independent Review" was completed sixteen (16) days after RCI claims to have sent the Review Denial Letter to Plaintiff.

80. The report from the expert who completed the "outside Independent Review" listed several records which the expert received from RCI with the request for review, which included:

    a.  01/22/20 RCI Notes;

    b.  The Plan Language;

    c.  04/19/17 The Phia Group Opinion;

    d.  12/15/18 Operative Notes;

    e.  12/15/18 Laboratory Results;

    f.  08/26/19 Appointment of Personal Representative;

    g.  09/04/19 Letter of Appeal;

    h.  11/06/19 Letter of Appeal;

    i.  11/15/19 Letter of Appeal; and

    j.  01/21/20 MedWatch Case Referral Form.

81. The notes the expert received from RCI for the "outside Independent Review" were dated January 22, 2020, fifteen (15) days after RCI claims to have sent the Review Denial Letter to Plaintiff.

82. The expert referral form for the expert to complete the "outside Independent Review" was dated January 21, 2020, fourteen (14) days after RCI claims to have sent the Review Denial Letter to Plaintiff.

83. Upon information and belief, RCI intentionally and fraudulently misrepresented to Plaintiff that the Review Denial Letter was sent on January 7, 2020.

84. In the alternative, upon information and belief, RCI did not obtain the "outside Independent Review" until after it completed its review of the adverse benefit determination.

85.     RCI did not afford Plaintiff a reasonable opportunity for a full and fair review of the decision to deny her claim for benefits.

86.     RCI substantially failed to comply with the procedural requirements set out in the Plan.

87.     RCI substantially failed to act in accordance with the documents and instruments governing the Plan.

88.     RCI substantially failed to comply with the procedural requirements set out in § 503 of ERISA.

89.     RCI failed to provide Plaintiff reasonable access to, and copies of, all documents, records, and other information relevant to Plaintiff's claim for benefits.

90.     When RCI denied Plaintiff's claims, the only evidence that it had of Plaintiff's supposed intoxication was a statement of opinion by an Emergency Room Physician and Plaintiff's Component Alcohol Serum Value determined by Parker Adventist Hospital.

91.     Plaintiff's blood alcohol content was not tested at the scene of the accident by anyone, including the responding officer.

92.     Plaintiff's Component Alcohol Serum Value test as determined by Parker Adventist Hospital was not performed until over an hour after Plaintiff's accident.

93.     RCI does not have any evidence, documentation, or record of Plaintiff's blood alcohol content at or near the time of the accident.

94.     RCI did not prove that Plaintiff's Component Alcohol Serum Value as determined by Parker Adventist Hospital was indicative of Plaintiff's Component Alcohol Serum at the time of the accident.

95.     RCI did not prove that Plaintiff's Component Alcohol Serum Value as determined by Parker Adventist Hospital was accurate.

96.     RCI did not prove that by dividing Plaintiff's Component Alcohol Serum Value by 1.20, an accurate whole blood alcohol content could be determined.

97.     In denial of Plaintiff's claims, RCI unreasonably ignored overwhelming, substantial evidence that Plaintiff's injuries were not a result of her being under the influence of alcohol at illegal limits while operating a motor vehicle.

98.     RCI's denial of Plaintiff's claims and Plaintiff's appeal were unreasonable, were contrary to the facts, constituted an abuse of discretion, and showed a lack of good faith on the part of RCI.

99.     Additionally, the "Illegal Act" and "Alcohol" exclusions included within the Plan, which RCI used to consider in its denial of Plaintiff's emergency services claims, goes against the mandatory provisions of the Affordable Care Act (ACA).

100.    Based on the evidence submitted to RCI establishing that Plaintiff has met and continues to meet all of the Plan's conditions for benefits, Plaintiff is entitled to benefits retroactive to December 15, 2018, and said benefits are due and owing through the date of judgment with interest due on all past-due payments.

## FIRST CLAIM FOR RELIEF
### (Improper Denial of Benefits Due against the Plan and RCI, ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

101.    Plaintiff incorporates by reference herein all allegations previously set forth.

102.    Defendants' denial of medical benefits is and has been in derogation of Plaintiff's rights by contract and pursuant to law.

103.    Defendants' denial of medical benefits and its refusal to reverse its decisions upon reviews of Plaintiff's claims were not substantially justified decisions, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuse of any discretion allowed, and were wrongful under all the circumstances.

104.    ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) provides a plan participant such as Plaintiff with a civil action to recover benefits due under the terms of a plan and to enforce her rights under the terms of the plan. Plaintiff is entitled to recover medical benefits due to her under the terms of the Plan.

105.    As a result of Defendants' violations of ERISA and/or the clear language of the Plan alleged above, Plaintiff has been denied benefits due.

106.    Pursuant to 29 U.S.C. § 1132(g), Plaintiff is entitled to an award of reasonable attorneys' fees and costs incurred in bringing this action.

### SECOND CLAIM FOR RELIEF
**(Breach of Fiduciary Duty against RCI,
ERISA Section 404(a), 29 U.S.C. § 1104(a))**

107.    Plaintiff incorporates by reference all allegations previously set forth herein.

108.    ERISA Section 404(a), 29 U.S.C. §1104(a)(1) provides, *inter alia*, that a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with Title I of ERISA.

109.    A cause of action to enforce Section 404 is provided by ERISA Section 502(a)(3), 29 U.S.C. §1132(a)(3).

110.    RCI failed to comply with its fiduciary duties under the Plan by:

i.     Failing to provide Plaintiff with all information reasonably necessary or appropriate for her to protect her rights and interests under the Plan;

ii.    Failing to provide Plaintiff with proper notification of the adverse benefit determinations in accordance in the instruments governing the Plan;

iii.   Failing to act in accordance with the instruments governing the Plan by refusing to provide Plaintiff with the information relied upon and the identity of any medical experts consulted in connection with the claim;

iv.    Failing to provide reasonable access to, and copies of, all documents, records, and other information relevant to the Plaintiff's claim for benefits in RCI's possession upon Plaintiff's request;

v.     Failing to provide information regarding the appeals procedures offered by the Plan upon Plaintiff's request;

vi.    Failing to provide any internal rule, guideline, protocol or other similar criterion relied upon in making the adverse determination upon Plaintiff's request;

vii.   Failing to provide Plaintiff a reasonable opportunity for a full and fair review of her claims and the adverse benefit determinations in accordance with the instruments governing the Plan;

viii.  Failing to conduct a review that did not afford deference to the previous adverse benefit determination in accordance with the instruments governing the Plan;

ix.    Failing to perform a review that took into account all comments, documents, records, and other information submitted by Plaintiff relating to the claim;

x.      Failing to act in accordance with the instruments governing the Plan by controverting its plain meaning and introducing language in its Review Denial Letter that is not contemplated by the Plan;

xi.      Failing to notify Plaintiff of its benefit determination on review with the sixty (60) day timeframe required by the instruments governing the Plan;

xii.      Acting in its own self-interest by refusing to consider evidence showing that the denial of benefits had been in error;

xiii.      Failing to correct its mistake in denying Plaintiff's benefits;

xiv.      Misrepresenting pertinent facts to Plaintiff about the timing, manner, and content of the adverse benefit determination on review;

xv.      Making false and misleading representations to Plaintiff about its review of the adverse benefit determination; and

xvi.      In bad faith forcing Plaintiff to file a civil action to obtain the relief that it should have provided without the need for this litigation.

111.      As a result of RCI's breach of its fiduciary duty to Plaintiff, Plaintiff suffered losses, including, but not limited to, denial of benefits owed to her under the Plan and deprivation of her right to a full and fair review of RCI's adverse benefit determination.

112.      Pursuant to 29 U.S.C. § 1132(g), Plaintiff is entitled to an award of her reasonable attorneys' fees and costs incurred in bringing this action.

### THIRD CLAIM FOR RELIEF
### (Refusal to Supply Requested Plan Documents against RCI, ERISA Section 502(c), 29 U.S.C. § 1132(c))

113.      Plaintiff incorporates by reference all allegations previously set forth herein.

114.    ERISA Section 502(c), 29 U.S.C. § 1132(c) states that a penalty is due to be paid by any administrator who fails or refuses to comply with a request for information "which such administrator is required by this subchapter to furnish to a participant or beneficiary" within thirty (30) days. ERISA Section 109(c), 29 U.S.C. § 1029(c) provides the Secretary of Labor "may prescribe the format and content of . . . any other . . . documents . . .which are required to be furnished or made available to plan participants and beneficiaries."

115.    The Secretary of Labor's ERISA claim procedures regulations, set forth in 29 C.F.R. § 2560.503-1, describe what documents an administrator must provide for a full and fair review of the claim, including "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1 (h)(2)(iii). The Secretary explains at Paragraph (m)(8)(i) of that section that a document "shall be considered 'relevant' to a claimant's claim" if it "[w]as relied upon in making the benefit determination."

116.    On July 21, 2020, Plaintiff requested all documents, records, and other information relevant to the Plaintiff's claim for benefits and RCI's adverse benefit determination.

117.    Plaintiff's July 21, 2019 request for documents was received by RCI on July 27, 2020.

118.    RCI did not provide any of the documents, records, and other information requested by Plaintiff until October 11, 2019, seventy-six (76) days after receiving Plaintiff's request.

119.    On July 21, 2020, Plaintiff requested the latest plan summary, plan description, and the latest annual report from RCI.

120.    To date, RCI has not provided the latest plan summary, plan description, or the latest annual report from RCI.

121.     Since RCI failed to provide all documents, records, reports, and other information requested within thirty (30) days following Plaintiff's request, it obstructed and prevented Plaintiff from having a full and fair review of RCI's denial of Plaintiff's claims.

122.     Since RCI failed to provide all the documents, records, reports, and other information Plaintiff requested, RCI has obstructed and prevented Plaintiff from being able to offer the necessary information and evidence into the administrative record.

123.     Pursuant to ERISA section 502(c)(1), 29 U.S.C. §1132(c)(1), Plaintiff is entitled to penalties of $100.00 per day for RCI's failure to provide requested documents within thirty (30) days of her request.

124.     Pursuant to 29 U.S.C. § 1132(g), Plaintiff is entitled to an award of her reasonable attorneys' fees and costs incurred in bringing this action.

**FOURTH CLAIM FOR RELIEF**
**(Failing to Fully and Fairly Review Plaintiff's Claims against RCI,**
**ERISA Section 503, 29 U.S.C. § 1133(2))**

125.     Plaintiff incorporates by reference all allegations previously set forth herein.

126.     ERISA Section 503, 29 U.S.C. § 1133 sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries.

127.      ERISA Section 503 states that every employee benefit plan shall "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant…."

128.   ERISA Section 503-1(h)(1) states that every plan must provide "claimant[s] . . . a reasonable opportunity to appeal [a denied claim] to an appropriate named fiduciary, and under which there will be a full and fair review of the claim."

129.   ERISA Section 503-1(h)(2) provides that a plan's review procedure must allow claimants to review pertinent documents.

130.   RCI substantially failed to comply with the procedural requirements set out in ERISA Section 503 by:

    a.   Failing to state with specificity the reasons for its denial of Plaintiff's benefits, therefore obstructing and preventing Plaintiff from having a full and fair review of RCI's denial of her Claims;

    b.   Failing to provide Plaintiff with all information reasonably necessary or appropriate for her to protect her rights and interests under the Plan;

    c.   Failing to provide Plaintiff with proper notification of the adverse benefit determinations in accordance in the instruments governing the Plan;

    d.   Failing to act in accordance with the instruments governing the Plan by refusing to provide Plaintiff with the information relied upon and the identity of any medical experts consulted in connection with the claim;

    e.   Failing to provide reasonable access to, and copies of, all documents, records, and other information relevant to the Plaintiff's claim for benefits in RCI's possession upon Plaintiff's request;

    f.   Failing to provide information regarding the appeals procedures offered by the Plan upon Plaintiff's request;

g.   Failing to provide any internal rule, guideline, protocol or other similar criterion relied upon in making the adverse determination upon Plaintiff's request;

h.   Failing to provide Plaintiff a reasonable opportunity for a full and fair review of her claims and RCI's adverse benefit determinations in accordance with the instruments governing the Plan;

i.   Failing to conduct a review that did not afford deference to the previous adverse benefit determination in accordance with the instruments governing the Plan;

j.   Failing to perform a review that took into account all comments, documents, records, and other information submitted by Plaintiff relating to the claim;

k.   Failing to act in accordance with the instruments governing the Plan by controverting its plain meaning and introducing language in its Review Denial Letter that is not contemplated by the Plan; and

l.   Failing to notify Plaintiff of its benefit determination on review with the sixty (60) day timeframe required by the instruments governing the Plan.

131.   RCI's substantial failure to follow the procedural requirements set out in Section 503 obstructed and prevented Plaintiff from being able to offer the necessary information and evidence into the administrative record.

132.   As a result of RCI's substantial failure to follow the procedural requirements set out in Section 503, Plaintiff was deprived of a full and fair review of RCI's denial of Plaintiff's Claims.

133.   Pursuant to 29 U.S.C. § 1132(g), Plaintiff is entitled to an award of her reasonable attorneys' fees and costs incurred in bringing this action.

## FIFTH CLAIM FOR RELIEF
**(Violation of Requirement to Comply with ERISA against RCI and The Plan,
ERISA Section 404(a), 29 U.S.C. § 1104(a))**

134.     Plaintiff incorporates by reference all allegations previously set forth herein.

135.     A fiduciary is required to act in accordance with plan documents *only to the extent* that the actions required by the documents are consistent with ERISA.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

136.     The Plan administered by RCI contains several exclusions for coverage of medical benefits, including exclusions for charges arising from a participant who was injured while participating in an activity made illegal due to the use of alcohol.

137.     Pursuant to ERISA Part 7 and the Patient Protections section of the ACA 42 U.S.C. § 300gg-19a(b)(1), if a group health plan provides or covers any benefits with respect to services in an emergency department of a hospital, the plan or issuer shall cover emergency services *"without regard to any other term or condition of such coverage* (other than exclusion or coordination of benefits, or an affiliation or waiting period, permitted under section 2701 of this Act, section 1181 of Title 29, or section 9801 of Title 26, and other than applicable cost-sharing.) (Emphasis added).

138.     Additionally, the ACA defines a "group health plan" as "an employee welfare benefit plan (as defined [under ERISA, 29 U.S.C. § 1002(1)]) to the extent that the plan provides medical care . . . to employees or their dependents . . . directly or through insurance, reimbursement, or otherwise." 42 USC 300gg-91(a)(1).

139.     The Plan is an employee welfare benefit plan under ERISA and is, therefore, a "group health plan" under the ACA. *See*, 29 U.S.C. § 1002(1) (defining employee welfare benefit plan as including "any plan . . . which was . . . established or maintained by an employer . . . for

the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits).

140.    The phrase "or an affiliation or waiting period" within 42 U.S.C. § 300gg-19a(b)(1) is set off by two commas. "Under normal rules of grammar (which we assume Congress followed), a phrase that is set off by commas can be excised from a sentence." *Chao v. Cmty. Trust Co.*, 474 F.3d 75, 81 (3d Cir. 2007).

141.    The phrase "permitted under section 2701 of this Act, section 1181 of Title 29, or section 9801 of Title 26" therefore applies to "exclusion or coordination of benefits." The exclusions of coverage for emergency services are thus limited to certain pre-existing condition provisions.

142.    Thus, neither the "Illegal Acts" nor the "Alcohol" Exclusions of the Plan fit within the foregoing exclusions allowed under 42 U.S.C. § 300gg-19a(b).

143.    Accordingly, the ACA mandates that ERISA Plans cover services in an emergency department of a hospital without regard to any other condition of coverage.

144.    Defendants have failed to comply with the mandatory provisions of ERISA Section 404(a) by considering the "Illegal Act" and "Alcohol" exclusions in denying Plaintiff coverage for emergency medical services, an action wholly contrary to the mandatory provisions of ERISA Part 7 and the ACA.

145.    Pursuant to 29 U.S.C. § 1132(g), Plaintiff is entitled to an award of her reasonable attorneys' fees and costs incurred in bringing this action.

## **CONCLUSION**

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants as follows:

1.      Declare that the RCI breached the duties, responsibilities and obligations imposed on it by ERISA;

2.      Declare that RCI failed to comply with its obligations under 29 U.S.C. Section 1133 and its implementing regulations to provide Plaintiff with the opportunity for a full and fair review of the denial of her claim and also violated those obligations by failing to fully and fairly review that denial;

3.      Declare that Plaintiff is entitled to medical benefits under the Plan relating to injuries that Plaintiff sustained as a result of the accident;

4.      Enter judgment in Plaintiff's favor and against Defendants and order Defendants to pay medical benefits to Plaintiff in an amount equal to the contractual amount of benefits to which Plaintiff is entitled;

5.      Order RCI to pay Plaintiff pre-judgment interest on all benefits that have accrued prior to the date of judgment;

6.      Declare that RCI failed to comply with its obligations as a fiduciary under the ERISA Plan;

7.      Order RCI to pay the Plaintiff the costs of suit herein, and a reasonable attorneys' fee, pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g);

8.      Order RCI to pay Plaintiff penalties pursuant to ERISA Section 502(c), 29 U.S.C. § 1132(c), based upon its failure to provide plan documents requested in a timely manner; and

9.      That the Court grant any further equitable relief as this Court deems just and proper.

Respectfully submitted this 24th day of August, 2020.

BENDINELLI LAW FIRM, P.C.
*This pleading is filed electronically pursuant to C.R.C.P. 121 § 1-26.*
*The original signed pleading is in counsel's file.*

By:    /s/ *S. Paige Singleton*
       Marco F. Bendinelli (#28425)
       S. Paige Singleton (#49011)
       Bendinelli Law Firm, P.C.
       9035 Wadsworth Pkwy., Ste. 4000
       Westminster, CO 80021
       Telephone: (303) 940-9900
       Facsimile: (303) 940-9933
       Email:SPS@CoLawFirm.com;
       MFB@CoLawFirm.com
       *Attorneys for Plaintiff*

Address of Plaintiff:
4752 Moonshine Ridge Trail
Parker, Colorado 80134